Indemnity Co. Mr. Crosbrook. Good morning members of the panel. The issue before the panel is a simple one. Is this an inter-carrier tender or not? Right? That's the question as to why we're all here. Because the district court clearly unequivocally ruled that the multi-story unit exclusion applies. That would bar coverage entirely. If it's timely. If it's not timely, then it doesn't bar coverage because it can't be asserted under 3420. The key facts in this case from Midvale's perspective that make this an inter-carrier tender distinct from the other First off, in this case, unlike many of the other cases, there is no dispute that both Emtech and Decatur have been provided with a defense from underwriters throughout the entirety of the litigation. That is not like a situation where there's an uninsured party that's coming before an insurance company saying, I want coverage. I'm uninsured. I have out-of-pocket expenses. None of those things are in the record in this particular case. But don't we have that in other case law, like the Sierra case from the New York Court of Appeals and so on? There are other cases where there are multiple insurance carriers and the New York courts still say you have to provide notice to the insured. In this case, what I think makes it factually distinct is the fact that the relief sought by underwriters in the context of their declaratory judgment action is one that primarily is focused upon obtaining primacy of coverage of the Midvale policy going before the underwriters policy. That is something that I think makes this factual situation distinct because 3420 is designed at its heart to protect plaintiffs, injured plaintiffs, and uninsured parties. How does the duty to indemnify factor into this? It seems to me that if you prevail here, then you would be off the hook for I think that is correct. So why doesn't that tell us that the insured parties have a very important interest here because everybody from the underlying plaintiffs through the underlying defendants want to know how much coverage is available. Otherwise, how could anyone settle the case? I think that is a key point. And the reason that in this case it is distinct is because there is no evidence in the record to suggest that the limits of insurance provided by underwriters in fact exceed the value of the case. That is to say, in New York, you don't have to specify, and I think the plaintiff doesn't specify an ad dominum. So there is nothing in the complaints in the underlying action that says how much is being demanded. I am not sure there is even anything from which, you folks may know, but I don't know if there is anything in the record that tells us what the injuries were and how severe they were. Yes, I think that is fair. I think this motion or this proceeding came to this panel on a stipulated set of facts. There is no stipulation, no set of facts that suggests that the claim exceeds the million-dollar limits of the underwriters. Why is the burden on them to establish that it will exceed coverage? In most cases, well, in a lot of cases, I shouldn't say most cases. In a lot of cases, you can't tell in advance what the level of damage is going to turn out to be. You take discovery. You try to figure it all out. If there were only one insurer, you do that and then maybe settle the case or maybe try the case. And maybe you wouldn't know until the case is tried what the actual damages are. But where there are multiple insurers, why don't the insurers have a significant interest in determining what the limits of their coverage would be before they sit down to negotiate with the underlying plaintiff? Well, in this case, they're not the ones negotiating. The ones negotiating would be underwriters or in the context of the caterer, there's another insurance policy also. Those are the people who are being less than literal in terms of who sits down to negotiate. But if only one policy is in play and it turns out that or even if both policies are in play and it turns out that the damage has exceeded, the insurers are going to be on the hook for that excess. So knowing what coverage they have seems to me to be a vital interest of the insurers in a case like this. Why am I wrong about that? Well, you're wrong to the extent that in this particular context, there's nothing in the factual record to support that it exceeds the value. And I think there's no doubt with a case that goes back to 2019 or before in terms of the underlying litigation, that there are any number of ways to get into the factual record before this panel. Why does there not be something that shows that it exceeds the value because you think that the insured has the burden to show prejudice from the lack of coverage? No, we don't think prejudice is required under 3420. Okay, so if there's no requirement to show prejudice, then why does it matter whether there's something in the record that shows what the claim here is? I mean, you said that there's nothing in the record to show that the claim exceeds a million dollars. There's nothing in the record to show that it doesn't exceed a million dollars. So we just don't know either way. And if there's no requirement to show prejudice, why does that mean the burden falls on the insured in that case? Well, because in this case, the insured or in this case, underwriters are the ones who are seeking the coverage from the Midvale policy. They're the ones who are seeking that the Midvale policy comes before the underwriter's policy. But that's how it's supposed to work under the contracts, right? So why would they have to show that it's actually necessarily going to mean coverage for the insured if they just want to enforce the contracts? Why can't they just do that? Which contracts? The insurance contract or the underlying contract? Because in this case, both TFDecatur and MTEC are not the named insurers. They didn't bargain for the contract in the first place. They became additional insurers by virtue of endorsement of the policy. Right, but they bargain for it in the sense that they require their subcontractor to get the insurance coverage that covers them, right? So they have an interest in it. So why wouldn't they want that? So there's one question about, you know, you say it doesn't require prejudice. So I don't even know if it matters whether they could show that they have some kind of financial interest in the coverage. But even assuming it does, there's the question about maybe the claim will exceed the limit of a million dollars. But then also, doesn't the Lloyds policy have an aggregate limit of $2 million for all future claims? And so if they're relying on the Lloyds policy, they're eating up that policy. And so they would also want the mid-bail policy to cover conduct involving the subcontractor so that they don't eat up their aggregate coverage. I mean, that's also an interest in having the mid-bail policy covered. It makes a difference to the insurer, doesn't it? Which policy is going to cover it in this case? If this is a multi-million dollar policy exposure case, which is not in the record, then the London policy, the underwriter's policy, is going to be eaten up anyway. Whether it's an aggregate or not, it's a million dollar per occurrence. If this is a multi-million dollar event, that exceeds the limits of the mid-bail policy, which is a million dollars. No, but the aggregate limit applies to all future events, right? They don't know what's going to happen in the future. They just don't want to eat away at the aggregate limits. Well, in this case, it would be a past event because this is an occurrence-based policy. So in respect of that, the claims that have already had to have occurred have most likely already been filed given the timing of the Lloyd's policy. The statute of limitations would have expired on additional claims. So if there were other claims that would have eaten to the aggregate, that would be in the factual record, which it's not. So I submit there's no evidence of that in the current record before this panel. In a different situation, you might be right that that would apply in that particular case. But that's not what we have before us. So I think that's part of it. The other issue in respect of this is, it sort of goes, cuts both ways. To say that the underwriter's policy, where MTEC and Decatur have an interest in making sure the exclusion, which was untimely, in respect of them does not apply, only if the policy exceeds a million dollars, rewards underwriters to the extent the claim doesn't come under or comes under a million dollars. Because in other words, if underwriters is the party in interest in respect of this. So there is surely a party in interest. No one's disputing that. But I'm just puzzled as to why, just in ordinary common sense, a party who is covered by various insurance policies does not have an interest in determining whether there is coverage under whatever policies are available. It just seems to be a fundamental, they're the insureds. They're the ones who are covered or not covered by the policy. How can you just say that you don't pay any attention to them because there's a big interest on the part of the insurers as between them. There surely is. The district court recognized that and said the 3420 does not apply insofar as they are asking for reimbursement. But insofar as the insurers are trying to figure out who's covering them, it just seems to me intuitively obvious that they have an interest. And then we've been articulating possible interest that they have. Well, I think in this case, Emtech and Decatur are being fully defended up to the point. They're being defended, but that's not all that's at stake. If you win here, you are off the hook for indemnity. You acknowledge that. And I don't see why that doesn't matter to the insureds and not just to Lloyds. Well, the question, you have two questions there. The first one that I was attempting to answer is in respect of how the tender was pressed in this case. It was not pressed by Emtech and Decatur saying give us coverage. It was pressed on behalf of counsel appointed by Lloyds of London to transfer risk. That makes it a different scenario in respect of the first part of your question than other types of situations. In respect of the second part of the question, I think the answer is, again, the factual record doesn't support any claim that exceeds the value of the indirect response. Well, I guess we understand that point. Could you just help me understand the practical consequences of this for the underlying litigation? Suppose you lose. There's a lawyer who is representing the defendants in the case who's been appointed by Lloyds and so far has been paid by Lloyds. If you lose, do you go out and pick new lawyers? Do you take over that lawyer and just take over the payments? Middeville would appoint new counsel. Would appoint new counsel? Yes. Okay. Who's on their panel and otherwise comports with their requirements. Can I ask how we ended up with this policy anyway? So the subcontract requires the subcontractor to get coverage for work that's being done at this apartment building. And yet the policy excludes all damages for work that's done at an apartment building. So how did it make any sense that the subcontractor even bought this policy and that it met the contractual requirements? Well, I would say blame the broker, but that's not really before the factual record here. Right. Somebody screwed up is the answer. I think that's a fair statement, yes. And they shouldn't have gotten a policy like this given the scope of risk that they were currently engaged in. Okay, thank you very much, Mr. Crossgrove. We'll turn to the appellee, Mr. Cohane. May it please the court, good morning. The tenders here were made by the insured, there's no question. As your honor points out, for them, having the coverage is real. It's not imaginary, it's real. If there is a claim that exceeds- Really, it doesn't. Your position is you don't have to show prejudice, and so you're a party of interest and you want to enforce your contractual rights, right? That's exactly right. It's exactly right. But from the perspective of the insured, they want their coverage, right? They were supposed to have coverage. They had a contract for required coverage. It provides them with a million dollars from his insurance. But isn't it right that this claim does not appear to exceed a million dollars, and so, therefore, the insured is going to get coverage regardless? We don't know what that's going to be, your honor. There's no determination made. This is a labor law case. It could be a multi-million dollar verdict. It could be a two-million dollar verdict. It's not on the record because it doesn't matter. It doesn't matter. This company made a mistake by refusing to disclaim, not to, we're not talking about underwriters, not part of this appeal. I'm talking about Emtech and TF Decatur. They were required to have coverage provided by the subcontractor. They had a policy. They had an obligation to disclaim to them if they wanted to disclaim to them. Whether this is a pure policy or not is a fair question, imaginary policy, not a fair question, judge. Before we move on to the other points, is there an answer to that? Is there some logic to it? Or is there somebody screwed up and it was the wrong policy to get? I'd be guessing. I'd be guessing. But it isn't unusual that some carriers issue policies with holes as big as Swiss cheese. And I've seen roofing policies with height exclusions. I mean, there's some very silly policies. But you don't dispute. I know it's not an issue on appeal, but you don't dispute at all that if they had timely disclaimed coverage and given the reason as the exclusion, it wouldn't have coverage. We don't dispute that, Your Honor. Don't dispute that. Among the people who screwed up reasonably are TF Decatur and M-TEC because they're the ones who demanded that the subcontractor get the insurance. And when the insurance, when a revelers claimed they had such insurance, somebody could have read the policy and said that's not good enough. Unfortunately, Your Honor, it's a common problem in the construction industry. We see this time and time again when people buy policies of insurance that's supposed to cover certain kinds of risks and don't. Yeah, I agree with you. That's not uncommon. And just on the question of who tendered the case to Midvale, I believe that Mr. Korsgaard said it was tendered by the lawyer. Of course, it's the lawyer who is representing the defendants in the underlying litigation who writes the letter. Yes. And he tendered it. I understood. Maybe I'm wrong. Correct me if I'm wrong. They tended it on behalf of Lloyds and the insurance. On September 24th, 2019, counsel for M-TEC tendered the defense to Midvale. Decatur tended the defense May 12th, 2020. So they each did independently. Yes. The insurance each were the initial tenderers of the case to Midvale. No question. And in fact, Lloyds did tender, but that was a separate tender. That was a separate tender. That's right. I mean, certainly to be truthful and honest, as your court indicated, it's the lawyer who is paid for. It's the same lawyer. Same lawyer. Same lawyer. But that lawyer may have been appointed by Lloyds, but I think it's a horn book that that lawyer owes a duty of loyalty to the client. Of course. Not just to the insurer who's paying him. Of course. And he tenders it on their behalf. Has as its obligation to try to find the coverage that it's entitled to. Yes. And, you know, Midvale could have disclaimed coverage timely. They waited two years before they disclaimed coverage. And now. When we're listing all the screw-ups in this case, there are a bunch of them of people who didn't do what you might expect that rational people would do. This is a no good deed goes unpunished argument here because they denied coverage. They shouldn't have because they did. Underwriters stepped up to protect their named insurers. And now Midvale wants to punish them for having other coverage. It doesn't make any sense. They're entitled to coverage under this policy. The insurance carrier failed to disclaim promptly to them. Well, it might make a difference if they had other coverage. If the whole thing were over and there was a settlement and whatever, you wouldn't get retrospective reimbursement of the other insurer, right? The judgment here is just coverage going forward. Well, that's what the case law seems to indicate. So it might have made a difference, you know, that you have. I mean, it's not a punishment exactly, but, like, the other insurer is not entitled to reimbursement from Midvale. Sure, but if there were. So the fact that it's still ongoing, that means that you have some kind of ongoing interest, right? Yes, that's right. And if a year from now or five years from now there's a million and a half dollar verdict, I don't know what it's going to be. We don't know what it's going to be. If there is, what Midvale says is, well, it's too bad, insureds. You've lost your coverage from us because somebody else stepped up and defended you. Doesn't make any sense. Why should they lose coverage that they're entitled to? If there are any other questions. Can I ask a bet? So you're talking about it might be a multimillion dollar verdict and so on. Does the aggregate limit, does that make a difference, too, that I brought up with opposing counsel? If it's an annual aggregate, yes, it would. If the aggregate was used up by other claims, these are usually annual. I didn't look at this issue, Judge, but usually the aggregate policies are annual aggregates. So it would be aggregate for that particular year. So if you had a $1 million per occurrence limit. So that might not make a difference here, if that's what it is. It might or might not. I just have no idea. I don't know what other claims are out there. I have no idea. Okay. Any other questions? If not, I'll submit. Okay, thank you very much. Thank you very much. Mr. Cohane, the case is submitted.